[Civil No. 4013.   Filed October 17, 1938.]

[83 Pac. (2d) 281.]

JOHN LEVANDOSKI, Appellant, v. GEORGE O. FORD, Appellee.

Mr. V. L. Hash, for Appellant.

Mr. J. S. Wheeler, for Appellee.

McALISTER, C. J.—George O. Ford brought an action against John Levandoski in which he sought to recover the value of certain personal property belonging to him but which he alleges the defendant converted to his own use, and from a judgment in his favor, as well as the denial of his motion for a new trial, the defendant appeals.

The substance of the complaint is that on or about the 2d of February, 1937, the plaintiff was the owner and entitled to the immediate possession of certain personal property in the basement of a building belonging to him located at the northwest corner of Central Avenue and Jefferson Street in the City of Phoenix; that some time subsequent to the 16th of February, 1937, the defendant, without plaintiff's knowledge or consent, wrongfully and unlawfully removed all this property from plaintiff's premises and converted it to his own use and benefit; and that he was damaged thereby in the amount of $295. The property involved, together with its value, was, according to the complaint, linoleum floor covering, $110; certain lights and light fixtures, $50; an electric switch box, $75; other electrical attachments, $25; and one window and sash, $35.

The defendant demurred generally to the complaint and denied each of its allegations. The court overruled the demurrer and following a trial rendered judgment for the plaintiff in the sum of $250, its action being based on these findings:

"That the plaintiff is the owner of certain premises located on the Northwest corner of Central Avenue and Jefferson Street in the city of Phoenix, and that on or about the month of February, 1937, and for a long time prior thereto, the defendant was a tenant of the plaintiff in said building, and that said tenancy terminated on or about the first day of March, 1937.

"That at the time of the termination of said tenancy, plaintiff and defendant, not being able to agree on a settlement, agreed to call in a disinterested party to assist in arriving at a settlement; that it was finally agreed between plaintiff and defendant that the defendant was to pay plaintiff $40.00 in cash, and to leave on said premises as plaintiff's property, the personal property described in plaintiff's complaint.

"That after making said final settlement the defendant retained possession of the key to said premises and without the knowledge or consent of plaintiff,

wrongfully removed from said premises certain personal property belonging to plaintiff, and converted the same to his own use and benefit.

"That the Court finds the reasonable value of the personal property to be the sum of $250.00."

The case was heard by the court without a jury and the facts out of which the action grew were shown to be substantially these: The plaintiff was the owner of a building in Phoenix on the northwest corner of North Central Avenue and Jefferson Street, and in August, 1935, through one Roy Hislop, leased a portion of its basement to one Jack Hightower or rather permitted an assignment to him of a lease of the premises then held by one Abe Fishman, the defendant guaranteeing at the time all payments of rent. After taking possession of the premises the lessee made some improvements in them and these were paid for out of moneys loaned Hightower by the defendant who with Hightower signed all checks issued in carrying on the business, including those in payment of rent.

In October, 1936, the place was closed by the police but from then until about March 1, 1937, possession was still held by the lessee or the defendant who kept the key to the premises. Around the latter date the plaintiff and the defendant, having had a number of conversations on the subject prior thereto, were endeavoring in the presence of Jack Hightower to settle their differences relative to the furniture to be left in the building and the price for each article, but being unable to reach any conclusion called Roy Hislop from upstairs who suggested that they arbitrate the matter, and he was selected by them to determine the damage that had been done and the proper basis of settlement. Before attempting any adjustment, however, he wanted to know just what equipment was going to be left in the building and what articles Levandoski, the defendant, was going to take. Thereupon the various items

to remain in the room were pointed out to him and among these were the electric lights and fixtures, electric switch box and the linoleum floor covering. It appears that a bar located in the west end of the room had been damaged, and after looking the situation over Hislop decided that in addition to leaving the enumerated articles in the room the defendant should pay the plaintiff $40 in damages, that to the bar being the principal item. This decision was accepted by the parties and the amount paid by the defendant's delivering his check for $12 to the plaintiff and agreeing to leave in the room two booths the lessee had built, for which plaintiff allowed him $28.

The evidence discloses that the afternoon of the day the agreement was made, or the day following, and before the key to the premises had been turned over to the plaintiff or his representative, the articles in question were removed without plaintiff's knowledge and that the linoleum was placed on the floor of a building on South Central Avenue which had been erected by the defendant and was then occupied by Jack Hightower, but no information as to the location of the other articles was obtainable.

The substance of the testimony in defendant's behalf was that he was not the lessee of the premises but that Jack Hightower was and that he worked for him in running the business, though he testified that all checks drawn by Hightower in the conduct of the business were signed by him as well as Hightower; that Hightower made the improvements in the premises but that he loaned him the money with which to do this and took a chattel mortgage on them as security and also guaranteed payment of the rent; that he did not put the articles in question in the building or remove them but that this was done by Hightower, though one Fern Day, a witness for defendant, testified that the

linoleum was removed in defendant's car, and that the defendant drove it.

Referring to the writing, permitting Jack Hightower to take an assignment of the lease held by Abe Fishman, Roy Hislop, who as plaintiff's agent drew it, was asked this question on cross-examination,

"Mr. Hislop, if Levandoski was the tenant as you say, why was it you didn't recite his name instead of Jack Hightower?"

He answered:

"Because Levandoski subsequently asked that Hightower be put in in case of a damage suit that he wouldn't be responsible."

At the close of the case the court announced that it had been established that the defendant was the real tenant of the premises in question and that the personal property, the fixtures set forth in the complaint, was taken while possession of the place was in the defendant. The court stated further that it was impossible to reconcile the testimony but that it was its view that the statements of Roy Hislop, probably the most disinterested witness in the case, together with those of the plaintiff, Mr. Ford, represented the truth. Thereupon judgment in favor of the plaintiff in the sum of $250—a value somewhat less than that placed on the articles by the witness Hislop—was rendered.

██ The complaint, it will be observed, alleges that the plaintiff was the owner and entitled to the immediate possession of the property in question on February 2, 1937, but it nowhere states that this was true any time after that or especially on the date the property was alleged to have been removed and converted to the use of the defendant. The demurrer was based upon this alleged defect and the order overruling it forms the basis of the first of the eight assign-

ments. It is true, as contended by appellant, that in order to state a good cause of action for damages based on a conversion the complaint should have alleged that the plaintiff was the owner or entitled to the possession of the property at the time of the conversion, since it was possible for the plaintiff to part with the ownership or right of possession at any date after February 2, 1937. While it might be argued with some plausibility that the condition alleged to have existed on that date continued until conversion, yet the rule, as it appears in 65 C. J. 80, is that

"in actions for conversion it is necessary to allege ownership, possession or right of possession of the property converted in plaintiff at the time it is alleged to have been converted."

Such being the situation, it is clear that the demurrer should have been sustained and the plaintiff permitted to amend by inserting the proper allegation. But in view of the fact that this defect was cured at the trial, the evidence having disclosed that the plaintiff's ownership and right of possession at the time of conversion were the same as they were on February 2, 1937, the error was not prejudicial and the assignment should not now be sustained. To remand the case with direction to the trial court to sustain the demurrer when it is clear that another trial would disclose the situation now before us would be requiring a futile thing and courts do not take actions of this character. The error, in view of the developments at the trial, was a harmless one and falls within the purview of section 22, article 6 of the state Constitution.

A determination of the foregoing assignment and the action of the court in finding upon evidence amply supporting its conclusions that the defendant was the lessee of the premises and that the property in question was removed while he still had possession,

renders a discussion of the other assignments unnecessary.

The judgment is affirmed.

ROSS and LOCKWOOD, JJ., concur.